UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                          Case No. 2:14-cr-107
        v.                            JUDGE GREGORY L. FROST

JOEY L. JARRELL,

        Defendant.

## OPINION AND ORDER

Before the Court is Defendant Joey L. Jarrell's motion to suppress statements made to

law enforcement filed on November 17, 2014 (ECF No. 74) and the Government's response filed

on November 26, 2014 (ECF No. 87). The Court conducted an oral hearing on this matter on

January 7, 2015 ("January 7, 2015 Hearing"). After a full review of the briefing and upon

consideration of the evidence presented at the January 7, 2015 Hearing, the Court finds that

Defendant Jarrell's motion is not well taken and the Court **DENIES** the same.

### I.      BACKGROUND

The parties called one witness, Special Agent Gregory Engelhard ("SA Engelhard"), at

the January 7, 2015 Hearing. The following facts are summarized from SA Engelhard's

testimony.

SA Engelhard has been an investigator for the United States Department of Agriculture

("USDA") for approximately ten years. In that capacity, SA Engelhard investigated a suspected

conspiracy to defraud the Government under the Non-Insured Crop Assistance Program

("NAP"). The Government now alleges that Defendant Jarrell and his co-defendants submitted

1

fraudulent claims through NAP to collect insurance payments to which they were not entitled.

At some point before or during SA Engelhard's NAP investigation, the Government received two anonymous complaints about the alleged conspiracy that implicated Defendant Jarrell.  SA Engelhard therefore sought to speak with Defendant Jarrell as part of his investigation.  Four conversations between SA Engelhard and Defendant Jarrell are the subject of the present motion to suppress.  Each conversation took place while Defendant Jarrell was a "person of interest" in SA Engelhard's investigation but before Defendant Jarrell was served with a target letter.

The first conversation between SA Engelhard and Defendant Jarrell took place on April 24, 2014.  On that date, SA Engelhard ran into Defendant Jarrell while he (Defendant Jarrell) was cutting the grass on the side of a road.  SA Engelhard, who was wearing street clothes at the time, approached Defendant Jarrell and initiated a conversation.  SA Engelhard identified himself as a special agent and showed Defendant Jarrell his badge.  SA Engelhard also informed Defendant Jarrell that he was investigating suspected fraud.

After speaking on the side of the road for approximately five to ten minutes, SA Engelhard suggested they go somewhere else to continue the conversation.  Defendant Jarrell suggested that SA Engelhard follow him back to his (Jarrell's) house.  SA Engelhard asked if that would cause any problems with Defendant Jarrell's work, to which Defendant Jarrell replied it would not.  SA Engelhard then followed Defendant Jarrell to his house, where they continued their conversation for approximately one hour.  The discussion included Defendant Jarrell's involvement with NAP, how much money he had received under NAP, and where he typically farmed, among other topics.  At some point during the conversation, SA Engelhard informed

Defendant Jarrell that he was armed and generally carries a firearm.

At no point during the conversation did SA Engelhard indicate that Defendant Jarrell was under arrest or suggest that Defendant Jarrell was going to jail unless he made a statement. Defendant Jarrell argued in his brief that he was threatened with not seeing his son; however, he did not present any evidence to that effect.  SA Engelhard testified that he did not make any such threats or statements about Defendant Jarrell's son.

The second conversation between SA Engelhard and Defendant Jarrell took place at Defendant Jarrell's house on February 24, 2013.  SA Engelhard did not recall whether he contacted Defendant Jarrell in advance of that conversation.  SA Engelhard wore plain clothes during that conversation and did not show Defendant Jarrell his badge or discuss his firearm. The topics of discussion included Defendant Jarrell's relationship with co-Defendant Christopher Wolfe and where Defendant Jarrell farmed, among other topics.  Defendant Jarrell also discussed a then-ongoing custody battle over his son.

At no point during the conversation did SA Engelhard indicate that Defendant Jarrell was under arrest or that Defendant Jarrell was not free to go.  SA Engelhard did not suggest that Defendant Jarrell would go to jail if he did not make a statement.

The third conversation between SA Engelhard and Defendant Jarrell took place telephonically on March 4, 2013.  On that date, Defendant Jarrell called SA Engelhard to ask where his NAP money was.[1]  SA Engelhard returned Defendant Jarrell's call, during which time Defendant Jarrell stated "there would be hell to pay" if SA Engelhard's investigation interfered

---

[1] SA Engelhard explained that Defendant Jarrell's NAP money was being withheld at that time as a result of the suspected fraud.  SA Engelhard did not know who made the decision to withhold Defendant Jarrell's NAP money.

with the custody battle over his (Jarrell's) son.  SA Engelhard did not indicate that Defendant Jarrell was under arrest or that Defendant Jarrell was not free to end the telephone call at any time.

Following that call, on May 22, 2013, SA Engelhard again went to Defendant Jarrell's house to speak with him about the NAP investigation.  SA Engelhard brought another investigator, Special Agent Hackney ("SA Hackney"), with him to Defendant Jarrell's house.  SA Hackney, who was armed at the time, showed Defendant Jarrell his badge.  The conversation between SA Engelhard, SA Hackney, and Defendant Jarrell lasted approximately two hours and involved the financial aspects of SA Engelhard's investigation.  At no point during that conversation did SA Engelhard indicate that Defendant Jarrell was under arrest or that Defendant Jarrell was not free to go.

The three conversations that took place at Defendant Jarrell's house were not recorded.  The March 4, 2013 telephone conversation was recorded.

At no point during any of the four conversations did Defendant Jarrell ask for an attorney or ask to end the conversation.  SA Engelhard testified that, had he been asked to leave Defendant Jarrell's house at any point, he would have done so.

Defendant Jarrell now moves to suppress the statements he made to SA Engelhard during each of the four conversations.  In his motion, Defendant Jarrell argues that his statements should be suppressed because SA Engelhard failed to inform Defendant Jarrell of his *Miranda* rights before each conversation in violation of Defendant Jarrell's Fifth Amendment rights.

**II.     ANALYSIS**

The Fifth Amendment to the United States Constitution provides that an individual may not be compelled to be a witness against himself.  U.S. CONST. amend. V.  To that end, the Supreme Court's decision in *Miranda v. Arizona* requires law enforcement officers to provide certain warnings before interrogating an individual who is in custody.  384 U.S. 436, 467–71 (1966).  If a court determines that the individual was "in custody" and did not receive *Miranda* warnings, any admissions made to law enforcement personnel while the individual was in custody will be suppressed.

To determine whether an individual was in custody for purposes of determining whether *Miranda* warnings were required, "courts consider 'all of the circumstances' surrounding the encounter, with the 'ultimate inquiry' turning on whether 'a formal arrest' occurred or whether there was a 'restraint on freedom of movement of the degree associated with a formal arrest.' " *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)).  This inquiry is objective and depends on "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action."  *Id*. (quoting *Stansbury*, 511 U.S. at 325).

The totality of the circumstances in this case suggests that Defendant Jarrell was not "in custody" during any of the four conversations with SA Engelhard.  First, the facts that three of the four conversations took place in Defendant Jarrell's home and that the fourth took place over the phone weighs against a finding of custody.  *See, e.g., United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998) (collecting cases for the proposition that, "when police question a suspect in a residence," the encounter "often" will "not rise to the kind of custodial situation that

5

necessitates *Miranda* warnings"); *see also Panak*, 552 F.3d at 465–66.  Second, the duration of

the conversations (all of which lasted less than two hours) further suggests that they were non-

custodial in nature.  *See, e.g., United States v. Mahan*, 190 F.3d 416, 420–22 (6th Cir. 1999)

(finding that an interview lasting 1.5 hours was non-custodial).  Finally, there is no evidence that

SA Engelhard or SA Hackney brandished their weapons, threatened Defendant Jarrell, or

physically restricted his movement in any way, thereby further suggesting that Defendant Jarrell

was not in custody during any of the four conversations at issue.  *Cf. Panak*, 552 F.3d at 466

(explaining that factors such as "the conspicuous display of drawn weapons" and "the show of

authority" could transform an interview at an individual's home into a custodial interrogation).

Defendant Jarrell argues in his brief that he was in custody because SA Engelhard

"demanded" cooperation, directed Defendant Jarrell to leave work to be questioned at his home,

told Defendant Jarrell that his marriage would be in jeopardy if he did not cooperate, and

"threatened" Defendant Jarrell with prison time and with losing contact with his son.  Defendant

Jarrell did not, however, provide any evidence in support of his assertions.  SA Engelhard

(whose testimony was the only evidence presented at the January 7, 2015 hearing) testified that

he was invited to Defendant Jarrell's home, that Defendant Jarrell was free to end the

conversations at any time, that he (Engelhard) never threatened Defendant Jarrell, and that he

(Engelhard) never indicated that Defendant Jarrell was going to prison or that his marriage or

relationship with his son was in jeopardy.  Defendant Jarrell's arguments on these points

therefore fail.

Defendant Jarrell's remaining arguments—that SA Engelhard informed Defendant Jarrell

that he was armed and that none of the in-person interviews were recorded—similarly do not

establish that Defendant Jarrell was in custody during any of the four conversations at issue.

Defendant Jarrell acknowledges that SA Engelhard never brandished a firearm.  There is no

indication that SA Engelhard's firearm had any impact on any of the four conversations.  And

the fact that none of the interviews were recorded (which, according to SA Engelhard, is

standard practice for the USDA) does not establish that Defendant Jarrell's freedom of

movement was restrained in any way.  There simply is no evidence to suggest that Defendant

Jarrell was in custody at any time during the four conversations with SA Engelhard.

### III.   CONCLUSION

Having found that Defendant Jarrell was not in custody during any of the four

conversations with SA Engelhard, the Court concludes that *Miranda* warnings were not required.

The Court therefore **DENIES** Defendant Jarrell's motion to suppress.

**IT IS SO ORDERED**.

<u>/s/ Gregory L. Frost</u>
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE