IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

  v.

CHRISTOPHER T. WOLFE
 and
TERRY J. MCNICKLE

      Defendants.

Case No. 2:14-cr-107(1 & 3)
Judge Gregory L. Frost

## OPINION AND ORDER

This matter came on for a hearing this 8th day of January, 2015 upon the Motion to Suppress (ECF No. 64) filed by Defendant, Terry J. McNickle, on November 17, 2014 and upon the Motion to Suppress (ECF No. 68) filed by Defendant, Christopher T. Wolfe, on November 17, 2014 as well as on the Consolidated Response (ECF No. 86) filed by the Government on November 26, 2014.

For the reasons that follow, the Court Finds the two Motions to be not well taken and the Court **DENIES** the same.

Both Motions to Suppress are identical. Defendants McNickle and Wolfe, argue that the affidavit attached to the Application for a Search Warrant fails to provide the requisite probable cause for the issuance of the search warrants used to search the Roadside Hot Spot business and Wolfe's residence. The Government asserts that the affidavit contains ample probable cause for the issuance of the search warrants.

1

**BACKGROUND**

To put this matter in context, the Court will explain the factual background of the case, summarize the affidavit in question, and then review the testimony presented at the hearing.

Defendants Christopher T. Wolfe ("Wolfe") and Terry J. McNickle ("McNickle") were indicted with three others in May 2014. The sixteen-count Indictment describes a conspiracy which sought to obtain public funds through the submission of fraudulent claims to the Non-Insured Crop Assistance Program ("NAP") administered by the USDA's Farm Service Agency ("FSA").

The investigation leading to the Indictment included search warrants signed by Magistrate Judge Kemp on August 14, 2012 and August 21, 2012, which are the subject of Defendants' motions. The search warrant applications were supported by two similar affidavits of Special Agent Gregory E. Engelhard ("SA Engelhard") of the Office of the Inspector General of the United States Department of Agriculture ("USDA-OIG") and were based on evidence that Wolfe was using his personal residence and business "to possess and conceal written documentation/records resulting from the creation of improper farming partnerships, and the illegal misrepresentations, schemes, and devices used to defraud the USDA funded NAP." The search warrant applications sought the authorized search of Wolfe's personal residence located at 48580 Blind Hollow Road, Racine, Ohio 15771, and the Roadside Hot Spot, a convenience store and gas station co-owned by Wolfe and McNickle, located at 53160 Nu Beginning Road, Portland, Ohio 45770.

The affidavits explain SA Engelhard's background and experience including specialized training regarding financial crimes related to USDA subsidized programs. Next, the affiant identifies that the investigation pertains to False Claims, Conspiracy, Theft of Public Money, and

False Statements.  The affidavit then contains information specifically identifying the business and residence to be searched.  Thereafter, SA Engelhard provides an overview of the NAP and how an eligible producer can obtain financial assistance when low yields, loss of inventory, or prevented planting occurs due to natural disasters.  The affidavits contain a summary of the alleged conspiracy and how payments are made to Wolfe by those who were solicited to enter into the conspiracy.  Included in the affidavit is Wolfe's background in NAP and that he has received in excess of $1,172,000 in disaster payments since 1998.

     The next section of the affidavit explains the investigative sources and interviews utilized by SA Engelhard.  First, on or about March 5, 2012, and anonymous complaint was received on the USDA-OIG Hotline in Washington, D.C. claiming that Wolfe and others were collecting disaster payments when they were not entitled to them.  Another anonymous complaint was received via the tipline identifying Wolfe and "nominee" producers colluding to receive disaster payments on an 80% - 20% split for the production of squash which historically has not grown in the area.  This tip was received on March 19, 2012.  SA Engelhard began making contact with individuals in the area.  He specifically identified eight sources of information in the affidavit that identified Wolfe and others, including McNickle, who were falsifying documents and conspiring to obtain disaster payments to which they were not entitled.  One source identified Wolfe's residence and the Roadside Hot Spot as locations where documents and records were maintained.  The sources requested anonymity for as long as possible for fear of retaliation from Wolfe.  SA Engelhard interviewed a total of 33 persons related to the investigation and he indicated in the affidavit that much of the information received was corroborated by records obtained and the different interviews he conducted.  SA Engelhard confirmed that Wolfe lived at the residence listed in the affidavit and frequented his business listed in the affidavit.  The agent confirmed that

correspondence from the USDA to Wolfe regarding his participation in NAP had been sent to both addresses.

The 21 page affidavit concluded with statements from SA Engelhard indicating that it was common for persons involved in program fraud to maintain documents relating to the fraud at their residence or place of business and that it is common to maintain the records on computers.

At the hearing, SA Engelhard was cross examined regarding the reliability of the sources he interviewed.  He testified that all of the information he received was corroborated by other individuals he interviewed or by documents he received as a result of subpoenas issued from the Grand Jury.  He identified three of the sources as being two co-defendants, Terry J. McNickle and Mark Wolfe, as well as one other defendant, Donald L. Greene, who has already entered a plea of guilty to a related conspiracy charge.

Defendants requested that SA Engelhard identify the other confidential sources.  The Government objected.  Based upon the Sixth Circuit case of *United States v. Cummins*, 912 F. 2d 98(1990), this Court sustained the objection.  As was stated in *Cummins*:

> Due process does not require the disclosure of an informant's identity at a suppression hearing.  *U.S. v. Raddatz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L.Ed.2d 424 (1980); *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d. (11 L.E.D. 2d 62 (1967).

Defendants McNickle and Wolfe, raise the same three particularized arguments: That the allegations do not demonstrate probable cause to believe that the elements of the crimes charged were present; that the affidavit failed to establish a proper nexus between the Roadside Hot Spot business or Wolfe's residence and the alleged criminal activity; and that the evidence relied upon in the affidavit was not reliable.

## ANALYSIS

The Fourth Amendment provides, "[n]o warrant shall issue but upon probable case, supported by oath or affirmation." U.S. Const, amend. IV. Probable cause is a fluid concept that is defined as being "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion" and exists "when there is a 'fair probability' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004), *cert. denied*, 543 U.S. 1095 (2005) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).

In *Illinois v. Gates*, the Supreme Court set forth the basic standard for assessing whether an affidavit establishes probably cause to issue a search warrant:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her]... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

462 U.S. 213, 238-39 (1983) (internal quotations and citations omitted); *see also United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003).

In assessing the issuing magistrate judge's probable cause determination, the reviewing court is concerned only with those facts which appear within the four corners of the affidavit. *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1998) (citing *Whitely v. Warden*, 401 U.S. 560, 564-65 (1971)).

It is clear from reading the affidavit that there was a fair probability that evidence of the crimes identified in the affidavit would be found at the Roadside Hot Spot and at Wolfe's residence. The affidavit contains summaries of the two anonymous tips received on the hotline.

Those tips named Wolfe as a participant n fraudulent activities.  These tips were then investigated by SA Engelhard.  The agent then included portions of interviews that he had with eight different sources.  Each of these eight interviewees named Wolfe, and on one occasion McNickle, as persons who were involved in collecting money from the NAP.  The sources revealed that the persons involved were, for the most part, part time farmers and did not actively engage in farming.  The sources outlined the recruitment efforts of Wolfe and the 80/20 split that was negotiated.  The sources verified that documents were falsified so that the FSA would be duped into believing that all of the participants were entitled to disaster funds.  Two sources mentioned bribes that Wolfe had attempted to make.  The sources explained that several of them had joint bank accounts with Wolfe to facilitate the arrangement and that the records of the transactions were maintained by Wolfe at his residence and the Roadside Hot Spot.  In addition to these sources, at least two dozen additional persons were interviewed and corroborated the information SA Engelhard had received from the other sources and his own independent investigations.

     Defendants appear to argue that the facts presented in the affidavit, even if assumed to be true, do not present probable cause to believe that a crime has been committed.  That argument has no merit.  SA Engelhard provided ample information to the magistrate that established a fair probability that evidence of a crime would be found.  The crimes referred to in this indictment center around an alleged conspiracy to commit fraud.  The affidavit provided an outline of a scheme that was devised by Wolfe and participated in by others to conceal information, submit false information, and create fictitious entities to conceal the interests of those participating in the scheme.  It may very well be that the Government will not be able to prove at trial the allegations but that is not the standard by which the probable cause issue is to be judged.  Much of his case involves records and documents.  The agent provided in his affidavit facts that establish that

probable cause existed to believe crimes had been committed and that evidence of those crimes existed at the locations identified.

Next, Defendants contend that the affidavit does not establish a proper nexus linking the Roadside Hot Spot and Wolfe's residence to the criminal activity. Even a cursory reading of the affidavit provides the necessary link. Many of the sources indicated that Wolfe kept records at both locations. SA Engelhard's surveillance provided the addresses. SA Engelhard's training and experience led him to believe that documents and electronically stored information are often kept at residences and businesses. The affidavit clearly provides a link between the alleged criminal violations and the two places sought to be searched.

Finally, Defendant's complain that the evidence relied upon in the affidavit was not reliable. This argument relates to the two anonymous tips received by the hotline as well as the eight sources who provided information to SA Engelhard and who wished to remain anonymous for as long as possible. First, as stated in the previous order regarding the request for a *Franks* hearing, the two tips received by the hotline were inserted in the affidavit to provide context and to explain why an investigation was undertaken. Those tips were then corroborated by the eight sources who wanted to remain confidential because of fear from retaliation. At the hearing, SA Engelhard explained that three of the sources were, in fact, co-defendants in the matter, that he had no reason to disbelieve the information that they provided, and that he conducted additional investigations involving several more witnesses, all of who provided corroborating information.

When a warrant is issued based on an affidavit whose information came from an anonymous tip sparse in detail and wholly uncorroborated by law enforcement, then no probable cause exists. *See United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir. 1993). But, that is not what we have here. Rather, we have two anonymous tips followed by eight sources who not only

corroborated the tips but also corroborated each other.  Further, we have the additional investigative work of SA Engelhard who interviewed at least 25 other individuals and obtained financial records and other documents to corroborate the statements made by others.  This is precisely what *Illinois v. Gates*, *supra* requires.  The United States Supreme Court in *Gates* rejected the former rigid two part test in favor of a "totality-of-the-circumstances" test.  In this case, using the totality-of-the-circumstances test, this Court finds that the magistrate judge issuing the warrant had a substantial basis for concluding that probable cause to search Wolfe's residence and business existed.  Under the *Gates* analysis, corroboration of the details of an anonymous tip and several sources of information are of significant value.  The magistrate judge could rely on the information provided which had been corroborated in major part by the agent's efforts.  The argument that the information provided by the tips and the sources were unreliable is not well taken.

## CONCLUSION

The Court finds that the allegations in the affidavit provide probable cause to believe that the elements of the crimes investigated were present.  The affidavit provides the necessary nexus to believe that evidence of a crime existed at the business and at the residence.  Furthermore, the information provided in the affidavit was reliable.

This Court **DENIES** Defendants' Motion to Suppress.

**IT IS SO ORDERED.**

       /s/   Gregory L. Frost
Gregory L. Frost
United States District Judge

8